IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LASHAWNDA N. HUFF, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 05-877-CO |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

ALAN STUART GRAF
P.O. Box 98
Summertown, Tennessee 38483

     Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

RICHARD M. RODRIGUEZ
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

     Attorneys for Defendant

COONEY, Magistrate Judge:

Plaintiff Lashwanda Huff seeks judicial review of the Social Security Commissioner's final decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

## BACKGROUND

Huff filed the present SSI application on June 11, 2002.  Tr. 65 - 67.[1]  She alleged disability due to diabetes, high blood pressure, carpal tunnel syndrome, glaucoma, and "bad nerves in legs."  Tr. 81.  Huff contends she has been unable to work due to these impairments since September 22,  2001.  Tr. 130.

Her application was initially denied.  Tr. 33 - 36.  A hearing was held before an Administrative Law Judge (ALJ) on June 30, 2004, and the ALJ issued an unfavorable decision on December 22, 2004.   Tr. 13 - 20.  Huff's request for review before the appeals council was denied, and she filed a timely petition in U.S. District Court.  Tr. 10 - 12.

Born in 1973, Huff left school in the eleventh grade.  Tr. 65, 136.  Between 1999 and 2004 Huff worked as a sales clerk and cashier.  Tr. 131.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential  process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Huff challenges the ALJ's evaluation of the evidence and his conclusions at step four.

---

[1]  Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on November 9, 2005 (Docket #11).

2 - FINDINGS AND RECOMMENDATION

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(I)  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four, or perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 404.1520(g),

3 - FINDINGS AND RECOMMENDATION

416.920(g).

## THE ALJ'S FINDINGS

The ALJ found Huff's ability to work impeded by her diabetes, diabetic complications, and right shoulder post operative capsulitis. Tr. 15, 16. The ALJ assessed Huff's RFC:

> The claimant has the following residual functional capacity:
> Specifically, she can lift and/or carry 10 pounds occasionally and
> frequently can lift and/or carry up to10 pounds. She can sit for 6
> hours, can stand and/or walk for 2 hours in an 8-hour workday.
> She cannot climb ropes, ladders or scaffolds. The claimant can
> occasionally climb stairs and ramps. She can occasionally bend,
> squat, kneel, crawl and crouch. In addition, the claimant can not
> reach overhead with the upper right extremity. The claimant
> cannot be exposed to any environmental hazards. The claimant has
> no mental limitation which would prevent unskilled work.

Tr. 19.

Drawing upon a vocational expert's testimony, the ALJ found that this RFC did not prevent Huff from performing jobs in the national economy, such as microfilmer, ticket checker or electrical assembler. Tr. 18, 440. Accordingly, the ALJ found Huff not disabled at any time through the date of his decision. Tr. 19 - 20.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). The

4 - FINDINGS AND RECOMMENDATION

reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v.*

*Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  In reviewing a credibility finding, the reviewing

court must consider whether the Commissioner provided "clear and convincing reasons" for

finding a claimant not credible.  *Reddick v. Chater*, 157 F.3d, 715, 722 (9th Cir. 1998).  Variable

interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational

reading.  *Magallanes*, 881 F.2d at 750; *see* also *Batson*, 359 F.3d at 1193.

**DISCUSSION**

Huff claims the ALJ erred in his step four finding by improperly assessing her credibility,

improperly evaluating the medical evidence and relying upon an inaccurate RFC in submitting

hypothetical questions to the vocational expert.

**I.  Huff's Credibility**

_____Huff claims the ALJ improperly assessed her credibility because he improperly

considered her non-compliance with treatment, improperly considered her reported activities of

daily living, improperly cited her prior applications and poor work history, and failed to set forth

"clear and convincing reasons" in rejecting her testimony.

The ALJ based his credibility finding upon 1) Huff's non-compliance with her diabetic

treatment regime, 2) Huff's reported activities of daily living, and 3) Huff's prior disability

application history and insubstantial work history. Tr. 15 - 16.

     **a.**        **Credibility Analysis.**

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court

to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*,

50 F.3d 748, 750 (9th Cir. 1995).  In construing credibility findings, the ALJ may consider

5 - FINDINGS AND RECOMMENDATION

objective medical evidence and the claimant's treatment history, as well as the claimant's daily

activities, work record, and observations of physicians and third parties with personal knowledge

of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as

weighing inconsistent statements regarding symptoms by the claimant. *Id*.

    **b.**    **Huff's Non-Compliance with Treatment**

The ALJ cited evidence showing that Huff was not compliant with her diabetes treatment

regime. Tr. 15. He specifically noted that she failed to take her insulin medication while on

vacation. Tr. 17. The ALJ also found her generally non-compliant with her diabetic treatment

regime. Tr. 15, 16. If an ALJ finds a claimant non-compliant, he must consider legitimate

reasons for which a claimant may refuse treatment, such as inability to afford treatment,

treatment contradictory to claimant's religion, or treatment posing extraordinary risk. *Gamble v.

Chater*, 6 F.3d, 319, 321(9th Cir. 1995), 20 C.F.R. § 416.930.

Huff submits that her non-compliance was limited to "dislike of sticking her finger" in

blood glucose tests. Plaintiff's Opening Brief, 18. She suggests that she "attended all referral

appointments to specialist," and cites medical records from Drs. Loomis and Beard to indicate

compliance with treatment. Plaintiff's Opening Brief, 16. Contrary to this submission, these

records demonstrate non-compliance. Loomis observed that Huff was a "frequent no-show" and

noted she had missed eight scheduled appointments. Tr. 347, 350. Loomis also noted that Huff

failed to keep appointments with Beard on at least two occasions. Tr. 255, 260, 389. Huff

additionally failed to attend a pain clinic appointment. Tr. 356.

Huff cites therapy attendance as evidence of compliance, but records show Huff attended

6 - FINDINGS AND RECOMMENDATION

meetings not more than twice, and did not give a reason for ceasing this regime.  Tr. 247, 249,

258, 267, 271.  Huff also twice self-discontinued her antidepressant medication.  Tr. 258, 375.

Loomis also noted that Huff failed to attend diabetic education classes and failed to attend

follow-up appointments with pharmacists for management of her medications.  Tr. 357, 359, 363.

On at least one occasion the diabetic class provider informed Loomis that Huff did not attend

classes.  Tr. 359, 361.  Finally, Loomis specifically noted that, contrary to Huff's submission,

Huff was not following her prescribed diabetic diet or checking her blood sugar levels.  Tr. 347,

356, 380; Plaintiff's Opening Brief, 9.

    This evidence supports the ALJ's general finding that Huff was not compliant with her

diabetic treatment regime.  The ALJ cited exhibits 5F and 7F in support of this finding, which

encompasses Loomis' records and the evidence recited above.  Tr. 15.  While the ALJ is required

to produce "clear and convincing" reasons for discrediting a claimant's testimony, he is not

required to exhaustively recite each piece of evidence recited in the record.  *Reddick*, 157 F.3d at

722,  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

    The ALJ's review of the record includes substantial evidence for his evaluation of Huff's

non-compliance with treatment.  Any failure to extensively articulate additional examples of

Huff's non-compliance with treatment is harmless.  *Howard*, 341 F.3d at 1012.  This court will

not disturb the ALJ's decision for harmless error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2005).

      **c.**    **Huff's Reported Activities of Daily Living**

    An ALJ may consider activities of daily living in evaluating credibility.  *Orteza*, 50 F.3d

at 750.  Here the ALJ noted Huff's ability to do laundry, dust, vacuum, take out the trash, shop

for groceries, ride the bus, play cards with friends, and pay bills. Tr. 16. Huff suggests the ALJ failed to base this finding upon exhibits in the record. Plaintiff's Opening Brief, 13. This is an erroneous submission: the ALJ appropriately cited exhibit 15E, which documented these activities. Tr. 16, 165 - 176.

While a claimant "need not vegetate in a dark room," activities such as those above may be construed as similar to the effort required for employment. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), *Orteza*, 50 F.3d at 750.

### d.    Huff's Prior Applications and Work History

Huff suggests her prior applications support, rather than undermine, her credibility. Plaintiff's Opening Brief, 17. Because she offers no argument in support of this proposition, none will be addressed.

Huff also submits that the ALJ inappropriately considered her past work history in questioning her credibility. Plaintiff's Opening Brief, 17. Because an ALJ may consider a claimant's sporadic work history in his credibility finding, this argument fails. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

### e.    "Little Medical Care"

Huff suggests the ALJ erred in noting that she "sought little medical care" during the period in question. Plaintiff's Opening Brief, 18, Tr. 17. In the context of the missed appointments described and discussed above, the ALJ's comment was consistent with the record. This court will not find error in inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193.

### f.     Crediting Huff's Pain Testimony

Huff claims the ALJ improperly rejected her pain testimony.  Plaintiff's Opening Brief,

17.  For the reasons above, the ALJ appropriately found Huff not credible.  While an ALJ may

not cite medical evidence as the sole reason for discrediting excess pain testimony, he is not

required to believe every allegation of disabling pain. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201

(9th Cir. 1990), *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Here, the ALJ cited several appropriate reasons for disbelieving Huff's testimony.  Huff

claims the record shows no evidence of malingering, specifically referring to worker's

compensation records.  Regardless, the ALJ found her not credible for sufficient reasons,

precluding application of the *Cotton* test regarding malingering.  *Smolen*, 80 F.3d at 1281, (citing

*Cotton v. Barnhart*, 799 F.2d 1403, 1407 (9th Cir. 1986)).  Huff's submission that the ALJ

improperly failed to credit her pain testimony fails.

## II.  Medical Source Statements

_____Huff argues that the ALJ failed to correctly evaluate her treating physician's opinion.  She

also argues that the ALJ incorrectly found her diabetic complications, high blood pressure,

vertigo, depression, and obesity non severe.

### a.     Treating Physician Dr. Loomis

Huff twice submits that the ALJ "did not even mention" her treating physician, Dr.

Loomis.  Plaintiff's Opening Brief, 16, 18.  Contrary to this assertion, the ALJ mentioned Loomis

by name and relied upon her records in assessing Huff's impairments and credibility.  Tr. 16.  In

citing the "claimant's physician," and specifying exhibits 7F, and 13F, the ALJ again noted

Loomis' records.  Tr.15 - 16.

9 - FINDINGS AND RECOMMENDATION

Huff next submits that Loomis found her disabled. Plaintiff's Opening Brief, 16.  On February 26, 2003, Loomis wrote a letter suggesting Huff might be excused from attending vocational rehabilitation classes.  Tr. 245.  Loomis suggested Huff would be unable to attend classes between February 26, 2003, and April 26, 2003.  Tr. 245.  In March 2003 Loomis wrote a second letter extending the period to May 1, 2003.  Tr. 273.  This closed period does not satisfy the twelve month durational requirement for disability.  20 C.F.R. § 416.909.  Notably, four days before writing the first letter, Loomis informed Huff that she thought "she will be able to return to work."  Tr. 277.  This statement does not support Huff's submission that Loomis showed "no indication plaintiff would have been able to return to at that time."  Plaintiff's Opening Brief, 16. Loomis' notes do not support Huff's alleged disability finding.   Furthermore, disability findings are reserved for the commissioner. 20 C.F.R. § 416.927(e).

**b.      State Agency Reviewing Physicians**

Huff finally claims the ALJ erroneously gave greater weight to state agency reviewing physicians, rather than treating physician Loomis.  The ALJ properly considered Loomis' opinions and records.  Generally, a treating physician is entitled to greater weight than an examining or reviewing physician. *Edlund*, 253 F.3d at 1157.  Here, the ALJ relied foremost upon Loomis' records, discussed above.  This court finds no error in the ALJ's assessment of the medical evidence.  The ALJ is responsible for evaluating medical evidence and resolving inconsistencies. *Edlund*, 253 F.3d at 1156.

**c.      Specific Impairments**

**_1.      Hyperglycemia_**

Huff submits she meets the listing for diabetes due to her "demonstrated repeated

hyperglycemia." Plaintiff's Reply Brief, 7. The relevant listing does not cite hyperglycemia as a

criteria. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 9.08. In order to meet the listing standard for

diabetes, a claimant must demonstrate diabetes mellitus with:

> A. Neuropathy demonstrated by significant and persistant
> disorganization of motor functioning in two extremities resulting in
> sustained disturbance of gross and dexerous movements, or gait
> and station or
>
> B. Acidosis occurring at least on the average of once every two
> months documented by appropriate blood chemical tests... or
>
> C. Retinitis proliferans [as evaluated under visual impairment
> listings].

20 C.F.R. Pt. 404, Subpart P, App. 1, § 9.08. Huff's neuropathy and retinal impairments,

discussed below, do not meet the listed standard. *Id.* Any suggestion that Huff meets the

diabetic listing fails.

### 2. *Diabetic Complications: Neuropathy*

Huff suggests the ALJ failed to consider her diabetic neuropathy as an impairment

distinct from her diabetes. Plaintiff's Opening Brief, 12. The ALJ twice noted Huff's

neuropathy, discussing this impairment both in his assessment of Loomis' notes and in assessing

Huff's testimony. Tr. 15, 16. While clinical notes show that Huff's treating physician suspected

Huff was experiencing early diabetic neuropathy, the relevant medical evidence also showed "no

evidence of early peripheral neuropathy" via nerve studies. Tr. 263. This supports the ALJ's

finding that Huff's neuropathy is non-severe. This court will not disturb an ALJ's decision based

upon a rational reading of the record. *Magallanes*, 881 F.2d 750.

### 3. *Vertigo*

11 - FINDINGS AND RECOMMENDATION

Huff's medical record reflects complaints of dizziness and vertigo between December 2002 and October 2003. Tr. 247, 252, 253. In December 2002 Huff was hospitalized for one day for this complaint. Tr. 250, 253. Because this impairment again does not meet disability durational requirements, the ALJ appropriately found this impairment non-severe. 20 C.F.R. § 416.909.

### 4.    *Hypertension*

In order to be found severe, an impairment must affect a claimant's ability to perform substantial gainful activity. *See Smolen*, 80 F.3d at 1290; 20 C.F.R. 415.921(a). Huff does not present any evidence or arguments suggesting her hypertension limits her ability to work. Plaintiff's Opening Brief, 12. Any omission is therefore harmless. The burden of establishing disability rests upon the claimant and this court will not disturb an ALJ's finding for harmless error. *Burch*, 400 F.3d at 679 (9th Cir. 2005), *Tackett*, 180 F.3d at 1098.

### 5.    *Depression*

Huff suggests the ALJ's finding regarding her depression is "without foundation." Plaintiff's Opening Brief, 14. The ALJ wrote that he

> [E]valuated the claimant's mental functioning. The undersigned notes that she has a depression. Specifically, she has only mild restriction of the activities of daily living and mild difficulties in maintaining social functioning. Futher she has mild difficulties in concentration, persistence, or pace. In addition, she has had no episodes of decompensation.

Tr. 16.

The ALJ appropriately noted treating physician Loomis' notes (exhibit 13F) in evaluating Huff's depression. Tr. 16. A general physician is competent to make psychiatric diagnoses. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Here, Loomis noted that Huff was

12 - FINDINGS AND RECOMMENDATION

taking high does of antidepressant medication, but made no indication that Huff's depression was debilitating. Tr. 351.  Loomis' clinical notes reveal tearfulness, but no disordered thinking, suicidal ideation, or other symptoms equivalent to listing standards. Tr. 268, 274, 350.  No evidence suggests Huff experienced significant decompensation or difficulties in concentration, persistence, and pace.  Additionally the ALJ noted that Huff did not comply with suggestions she attend counseling during the relevant period.  Tr. 16.  This observation is supported by Loomis' notes.  Loomis found that Huff attended counseling services not more than twice between April 2002 and January 2003.  Tr. 247, 249, 258, 271.

Huff suggests that she could perform activities of daily living on good days only. Plaintiff's Opening Brief, 13.  The activities of daily living cited by the ALJ were submitted to the record by a third party.  Tr. 165 - 176.  Because the ALJ appropriately found Huff not credible, he is not required to consider her allegations of disabling pain on "good" or "bad" days.

Huff also suggests the ALJ's synopsis of her mental functioning is a "bare assertion without foundation."  Plaintiff's Opening Brief, 13.  The ALJ drew his language from a Psychiatric Review Technique Form, prepared by Disability Determination Service (DDS)[2] reviewing physicians.  This form showed no restrictions in Huff's activities of daily living, social functioning, concentration, persistence, and pace, or any episodes of decompensation.  Tr. 322. The ALJ noted that he "carefully studied" this assessment.  Tr. 17.

The ALJ appropriately relied upon the evidence in the record in finding Huff's depression non-severe.  Tr. 16.  In making his findings, the ALJ is not required to articulate each piece of

---

[2]  DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

evidence in the record.  Howard, 341 F.3d 1012.   This court finds the Commissioner's
interpretation of the evidence regarding Huff's depression rational and based upon the record.
*Magallanes*, 881 F.2d at 750, *Batson*, 359 F.3d at 1193.

     **6.**    **Obesity**

     Huff suggests the ALJ failed to consider her obesity.  Plaintiff's Opening Brief, 15.  Huff's
application did not raise obesity as an impairment.  Tr. 81.  The burden of establishing disability
rests upon the claimant.  20 C.F.R. § 416.912, *Tackett*, 180 F.3d at 1098.

     Obesity is no longer a "listed" impairment under 20 C.F.R. Subpart P, Appendix 1.  SSR
02-01 *1 (available at 2000 WL 628049).  An individual with obesity will be found to "meet" the
listing standards if there is an impairment which meets the listing in combination with obesity.
SSR 02-01 *5.  *Burch*, 400 F.3d at 682.   In making this evaluation, the agency pays special
attention to musculoskeletal, respiratory, and cardiovascular impairments.  *Id.*

     Huff does not have any established respiratory or cardiovascular impairments.  Her non-
severe musculoskeletal impairments include carpal tunnel syndrome, right shoulder post-
operative adhesive capsulitis, and low back strain.  Tr. 15.   Huff fails to establish that her obesity
exacerbated any of her musculoskeletal impairments.

     Generally, an ALJ is not required to discuss the combined effects of a claimant's
impairments unless the claimant presents evidence in an effort to establish equivalence.  *Burch*,
400 F.3d at 683.  An ALJ has a heightened duty to consider obesity as a disabling factor when
three factors occur: 1) when a claimant's report of symptoms implicitly raises obesity, 2) when
claimant's obesity is "at least close" to the (now abolished) obesity listing, and 3) when claimant
is unrepresented.  *Burch*, 400 F.3d at 682.  Here, nothing in the record suggests the first two

factors arise.  The ALJ did not err in failing to consider Huff's obesity.  *Id.*

**d.    Analysis: Combined Effects**

Huff argues that the ALJ committed legal error in failing to consider her impairments in combination.  Plaintiff's Opening Brief, 12.  This court again notes that an ALJ is not required to consider impairments in combination unless a claimant presents evidence of equivalency.  *Burch*, F.3d at 683.

Huff additionally suggests the ALJ's decision is flawed because he did not conclude his "mere discussion of the various impairments" with a declarative "finding," instead issuing a "boilerplate pronouncement."  Plaintiff's Opening Brief, 13, Plaintiff's Reply Brief, 6.

In making a finding that a claimant does not meet a listing, singularly or in combination, the ALJ must consider the "symptoms, signs, and laboratory findings" regarding the claimant's impairment as reflected in the medical record.  *Marcia*,  900 F.2d at 176.  He may not conclude "the claimant has failed to provide evidence of medically determinable impairments that meet or equal the listings..." without reference to the medical record.  *Id.*  Huff suggests the ALJ is required to produce specific language directly comparing the evidence and listing.  Plaintiff's Opening Brief, 19.

Defendant submits that this burden is tempered by subsequent jurisprudence suggesting that an ALJ is not required to "state why a claimant failed to satisfy every different section of the listing of impairments."  Defendants' Brief, 15 (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)).  In *Gonzalez*, the ALJ summarized the evidence in the record and stated the information from each medical source and the claimant's testimony.  *Id.*

*Marcia* and *Gonzalez* may be distinguished based upon the ALJ's summary of the

evidence.  In *Marcia*, the claimant presented evidence regarding her impairments which the ALJ apparently ignored without discussion.  *Marcia*, 900 F.2d 176.  The ALJ's finding in *Gonzalez* was based upon a five page summary of the medical evidence, with reference to physicians and the claimant's testimony. *Gonzalez*, 914 F.2d at 1200.

As discussed above, this court finds that the ALJ appropriately based his findings upon the medical record.  The ALJ specifically discussed the evidence produced by Huff's treating physician Loomis. The ALJ adequately cited records submitted by Loomis and other treating physicians, and appropriately discussed Huff's depression.  Any omissions by the ALJ in discussing Huff's vertigo, blood pressure, and obesity are found to be harmless.  For these reasons, this court finds the ALJ's summary of the evidence sufficient in considering whether Huff met the listing standards in combination.  Tr. 15-17.

Huff additionally suggests the ALJ's decision is flawed because he did not conclude "his mere discussion of the various impairments" with a declarative "finding." Plaintiff's Opening Brief, 13.  It is unclear which impairment this statement refers to, as the ALJ noted that the evidence established Huff's diabetes with complications, carpal tunnel syndrome, glaucoma, right shoulder disorder, gastroenterologeal reflux disease, hypertension, low back strain, benign vertigo, and depression.  Tr. 15.  The ALJ specifically found Huff's carpal tunnel syndrome, low back strain, and depression non-severe.  Tr. 15-16.  Huff's remaining impairments satisfying the durational requirement were incorporated into the ALJ's RFC calculation, which he included in his evaluative findings.  Tr. 17.  The ALJ should have made a specific finding regarding Huff's hypertension, but this omission is harmless as there is no evidence Huff's hypertension limits her ability to work.  This court will not disturb the ALJ's decision for harmless error.  *Burch*, 400

16 - FINDINGS AND RECOMMENDATION

F.3d at 679.

### III.    The ALJ's Duty to Develop the Record

Huff claims the ALJ had a duty to obtain an updated medical source statement from treating physician Loomis.  Plaintiff's Opening Brief, 16.  While the ALJ is not "mere umpire," the burden of establishing disability rests upon the claimant.  *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1991), *Yuckert*, 482 U.S. at 146.

Huff subsequently directly contradicts her argument that the record is not well developed in her reply brief, writing, "she certainly has presented evidence, in the form of over 200 pages of medical records, as well as her specific testimony and through the provision of documentation of years of medical treatment."  Plaintiff's Reply Brief, 9.

The record is sufficiently developed.  The record includes extensive clinical notes, test results, and letters submitted by Loomis and other treating physicians.  Tr. 217 - 224, 225 - 231, 232 - 239, 245 - 302, 337 - 345, 346 - 409.  Loomis' submission indicates Huff's treatment between January 2003 and May 2004, when the record closes.  Tr. 245 - 302, 346 - 409.  The ALJ's duty to develop the record is triggered when evidence is insufficient or when ambiguities arise.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), *Armstrong v. Commissioner*, 160 F.3d 587, 590 (9th Cir. 1998).  Social Security regulations require the ALJ to assist the claimant in developing a complete record.  *Id.*  No evidence presently suggests Loomis' submission to Huff's record is incomplete.

### IV.   ALJ's Step Five Finding

At step five, the ALJ found that Huff could perform work in the national economy.  Tr. 19.  At Huff's hearing the ALJ solicited testimony from a vocational expert (VE).  The VE

17 - FINDINGS AND RECOMMENDATION

testified that Huff could work as a microfilmer, ticket checker, or electronic semi-conductor assembler. Tr. 440.

Huff claims the ALJ's hypothetical question to the VE is invalid because the ALJ omitted Loomis' opinion that Huff's "continued impairments made work and job search unsuitable." Plaintiff's Opening Brief, 20. This submission misconstrues Loomis' letter to the record, discussed above. Because Loomis made no finding of disability under social security regulations, the ALJ was not obliged to include this restriction in his questioning to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64, (9th Cir. 2001).

The ALJ appropriately based his step five determination upon VE testimony. Tr. 18. That testimony was adequately supported by the medical evidence and based upon proper standards. *See Osenbrock*, 240 F.3d at 1163-64.

In conclusion, Huff has not established that her condition prevents her from performing work in the national economy at step five. All of plaintiff's other arguemnts have been considered, and this court finds them unpersuasive. This court finds that the ALJ based his findings upon substantial evidence under the proper legal standards.

## **<u>RECOMMENDATION</u>**

This court finds that the Commissioner's decision that Huff did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and recommends the Commissioner's decision be AFFIRMED.

***<u>This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals</u>*.** **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or**

18 - FINDINGS AND RECOMMENDATION

appealable order. ***The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court.  Thereafter, the parties have ten days within which to file a response to the objections***.  **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this __14___ th day of August, 2006.

_____/s/_____
John P. Cooney
United States Magistrate Judge